UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESUS C., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, Commissioner of Social Security Administration, <br><br> Defendant. | Case No. CV 19-1651-SP <br><br> MEMORANDUM OPINION AND ORDER |

**I.**

**<u>INTRODUCTION</u>**

On March 6, 2019, plaintiff Jesus C. filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). The parties have fully briefed the matters in dispute, and the court deems the matter suitable for adjudication without oral argument.

Plaintiff presents one issue for decision, whether the Administrative Law

1

Judge ("ALJ") erred at step five by failing to resolve an inconsistency between the vocational expert's testimony and the Dictionary of Occupational Titles ("DOT"). *See* Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 4-11; Memorandum in Support of Defendant's Answer ("D. Mem.") at 4-7.

Having carefully studied the parties' moving and opposing papers, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ did err at step five, but the error was harmless. Consequently, the court affirms the decision of the Commissioner denying benefits.

## II.

## **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff, who was 23 years old on the alleged disability onset date, attended some college. AR at 52, 123. Plaintiff has past relevant work as a teacher's aide and fast-food cook. *Id*. at 52-53, 68.

On October 21, 2015, plaintiff filed an application for a period of disability and DIB, and on October 23, 2015, plaintiff filed an application for SSI, both applications alleging disability beginning May 30, 2015 due to plaintiff's inability to move his right arm and neck, back and shoulder pain, nerve "misalignment," and head trauma, all from a motorcycle accident which left him in a coma for over a month. *Id.* at 123-24, 137-38. The Commissioner denied plaintiff's applications initially, and upon reconsideration, after which he filed a request for a hearing. *Id*. at 153-160.

On November 27, 2017, plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ. *Id*. at 51-64, 65-68. The ALJ also heard testimony from Elizabeth Brown Ramos, a vocational expert ("VE"). *Id*. at 64-65, 68-71. On March 21, 2018, the ALJ denied plaintiff's claim for benefits. *Id*. at 31-44.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since May 30, 2015, the alleged onset date. *Id*. at 33.

At step two, the ALJ found plaintiff suffered from the following severe impairments: status post motorcycle accident with subarachnoid hemorrhage (SAH), subdural hematoma (SDH), temporal contusion and other injuries; right brachial plexus traction injury; cognitive disorder; and depressive disorder. *Id*.

At step three, the ALJ found plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1. *Id*. at 34.

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[1] and determined he had the RFC to: lift and carry twenty pounds occasionally and ten pounds frequently with the left upper (non-dominant) extremity only; sit for six hours in an eight-hour day; and stand and walk for six hours in an eight-hour day. *Id.* at 36. But the ALJ found plaintiff was unable to use the right upper extremity for reaching, handling, fingering, or feeling, and was limited to simple tasks. *Id.*

The ALJ found, at step four, that plaintiff was unable to perform his past relevant work as a teacher's aide and fast-food cook. *Id*. at 41.

At step five, the ALJ found there were jobs that existed in significant numbers in the national economy that plaintiff could perform, including counter clerk and conveyor belt bakery worker. *Id.* at 42-43. Consequently, the ALJ concluded plaintiff did not suffer from a disability as defined by the Social

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

Security Act. *Id.* at 43.

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. *Id.* at 1-7. The ALJ's decision stands as the final decision of the Commissioner.

## III.
## **STANDARD OF REVIEW**

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that

of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## DISCUSSION

Plaintiff contends the ALJ erred at step five because she improperly relied on the testimony of the vocational expert, who identified jobs that were inconsistent with plaintiff's RFC. *See* P. Mem. at 4-7. Specifically, plaintiff argues the ALJ erred by failing to resolve a conflict between the VE's testimony and the Dictionary of Occupational Titles. *See id.* at 7-11.

At step five, the burden shifts to the Commissioner to show that the claimant retains the ability to perform other gainful activity. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006). To support a finding that a claimant is not disabled at step five, the Commissioner must provide evidence demonstrating that other work exists in significant numbers in the national economy that the claimant can perform, given his or her age, education, work experience, and RFC. 20 C.F.R. § 416.912(b)(3).

ALJs routinely rely on the DOT "in evaluating whether the claimant is able to perform other work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990) (citations omitted); *see also* 20 C.F.R. § 416.966(d)(1) (stating the DOT is a source of reliable job information). The DOT is the rebuttable presumptive authority on job classifications. *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995). An ALJ may not rely on a VE's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the DOT, and if so, the reasons therefor. *Massachi*, 486 F.3d at 1152-53 (citing Social Security Ruling ("SSR") 00-4p). An ALJ's failure to do so is procedural error, but the error can be deemed harmless if no actual conflict exists or the VE provided sufficient support to justify deviation from the

DOT. *Id.* at 1154 n.19.

In order for an ALJ to accept a VE's testimony that contradicts the DOT, the record must contain "'persuasive evidence to support the deviation.'" *Id.* at 1153 (quoting *Johnson*, 60 F.3d at 1435). Evidence sufficient to permit such a deviation may be either specific findings of fact regarding the claimant's residual functionality, or inferences drawn from the context of the expert's testimony. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997) (citations omitted).

Here, during the November 27, 2017 hearing, the ALJ asked the VE whether jobs exist in the national economy for a hypothetical person with the same RFC as plaintiff, including his inability to use the right upper extremity for reaching, handling, fingering, or feeling. AR at 69. In response, the VE testified that a person with plaintiff's RFC could perform work existing in the national economy as a counter clerk (DOT 249.366-010) and conveyor belt bakery worker (DOT 524.687-022). *Id.* The VE further testified that both jobs would be eroded by ten percent to account for plaintiff's inability to use his right upper extremity, but that with the ten percent erosion, there would be 27,000 jobs nationally for the counter clerk position and 32,000 jobs nationally for the conveyor belt bakery worker position. *Id.* at 69-70.

In the hearing decision, the ALJ accepted the VE's identification of eroded job numbers as a reasonable explanation for the VE's opinion about the availability of jobs in the national economy "for an individual with, essentially, only use of one hand." *Id.* at 43. But during the hearing, the ALJ did not ask whether the VE's testimony was consistent with the DOT. *See id.* at 69-71. The ALJ thus erred in failing to inquire whether the VE's testimony was consistent with the DOT. *See Massachi*, 486 F.3d at 1152-53 (citing SSR 00-4p). Nonetheless, the ALJ's error is harmless since, as discussed below, there is no conflict between the VE's testimony and the DOT. *See id.* at 1154 n.19; SSR 00-4p.

    Plaintiff argues the ALJ erred in failing to resolve a conflict between the VE's testimony that plaintiff could perform the jobs of counter clerk and conveyor belt bakery worker despite his inability to use his right upper extremity and the DOT job descriptions. *See* P. Mem. at 7-11.  According to the DOT, the occupation of counter clerk requires occasional reaching, handling, and fingering, and the occupation of conveyor belt bakery worker requires occasional reaching and handling. *Id.* at 5-6; DOT 249.366-010, 524.687-022.  Plaintiff argues these jobs require "occasional use of both upper extremities," because reaching is defined as "extending the hands and arms in any direction," and handling is defined as "seizing, holding, grasping, turning, or otherwise working primarily with the whole hand or hands." *See* P. Mem. at 6-7 (quoting *The Revised Handbook for Analyzing Jobs* and SSR 85-15).  As such, plaintiff contends the DOT descriptions of these jobs, which require "bilateral reaching and handling," are inconsistent with the ALJ's RFC assessment precluding him from using his right upper extremity for reaching, handling, fingering, or feeling, and the ALJ erred in failing to resolve this conflict. *Id.* at 7-11.

    Here, as defendant points out, although the two challenged jobs do require occasional reaching and handling, there is no indication in the DOT that either of these jobs require the use of both arms or hands. *See* D. Mem. at 4-6 (citing DOT 249.366-010; DOT 524.687-022).  Plaintiff's argument that the positions of counter clerk and conveyor belt bakery worker are inconsistent with the ALJ's RFC precluding him from using his right arm and hand is premised on the erroneous assumption that these jobs require the use of "both upper extremities." *See* P. Mem. at 6-7.  But the DOT does not expressly contain a bilateral reaching and handling requirement, and indeed, courts have routinely held that a job requiring reaching, handling, or fingering does not necessarily require the use of both arms absent affirmative evidence to the contrary. *See Carey v. Apfel*, 230

F.3d 131, 146 (5th Cir. 2000) (noting that person with use of one arm could perform jobs requiring fingering and handling since the DOT does not require bilateral fingering and handling); *Palomares v. Astrue*, 887 F. Supp. 2d 906, 920 (N.D. Cal. 2012) (finding that because the DOT does not require reaching with both arms, plaintiff's limitation to occasional reaching and overhead reaching on his left side did not conflict with the DOT's requirement of "constant reaching"); *Slye v. Astrue*, 2012 WL 425266, *4-5 (C.D. Cal. Feb. 9, 2012) (finding no conflict between the DOT job description requiring frequent reaching and plaintiff's limitation to only occasional reaching with the left arm because the DOT does not require bilateral reaching); *McConnell v. Astrue*, 2010 WL 1946728, *6-7 (C.D. Cal. May 10, 2010) (holding that jobs requiring reaching and handling did not exceed plaintiff's limitation to work with one hand when there was no express bilateral requirement in the DOT for those positions).

      Because the DOT does not contain a bilateral reaching and handling requirement, the DOT does not indicate that plaintiff would be unable to perform the occasional reaching and handling requirements identified in the DOT for the counter clerk and conveyor belt bakery positions. Thus, the court finds there is no conflict between the VE's testimony that plaintiff could perform these jobs despite plaintiff's inability to use his right upper extremity and the occasional reaching and handling requirements identified in the DOT. The ALJ's error in not asking the VE about a potential conflict was harmless.

      Moreover, the ALJ explicitly "recognize[d] that the DOT does not distinguish between the use of one or both hands for activities such as lifting, carrying, reaching, handling, fingering, or feeling," and thus appropriately relied on the VE's "personal experience and expertise" to identify jobs that could be performed with one hand. AR at 43; *see Fuller v. Astrue*, 2009 WL 4980273, *3 (C.D. Cal. Dec. 15, 2009) (where nature of particular action required in

performance of job is not specified in DOT, ALJ may properly rely on testimony from VE to determine whether claimant can perform job in question despite claimant's limitations); *see also* SSR 85-15 ("Reaching . . . and handling . . . are activities required in almost all jobs. Significant limitations of reaching or handling, therefore, may eliminate a large number of occupations a person could otherwise do. Varying degrees of limitations would have different effects, and the assistance of a VE may be needed to determine the effects of the limitations.").

In testifying that a claimant with all of plaintiff's limitations, including the inability to use the right dominant hand, could perform the jobs of counter clerk and conveyor belt bakery worker, the VE specifically explained that the number of these jobs available were eroded by ten percent to account for plaintiff's inability to use his right upper extremity, but that with the ten percent erosion, there would still be 27,000 national jobs for the counter clerk position and 32,000 national jobs for the conveyor belt bakery worker position. AR at 69-70 As such, the VE used her experience and expertise to fill in any gap in the DOT with respect to the need for use of both upper extremities in the jobs identified, and this testimony constituted substantial evidence supporting the ALJ's finding. *See Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999) (VE's testimony may constitute substantial evidence of a claimant's ability to perform work which exists in significant numbers in the national economy when the ALJ poses a hypothetical question that accurately describes all of the claimant's limitations that are supported by the record); *see also Johnson*, 60 F.3d at 1435 ("[A]n ALJ may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation."). The ALJ thus properly relied on the VE's testimony.

Accordingly, although the ALJ erred in failing to ask the VE about any potential conflicts with the DOT, the ALJ's error was harmless because there was

no conflict between the VE's testimony and the DOT, and the VE provided a sufficient explanation such that it was reasonable for the ALJ to rely on the VE's testimony at step five.

## V.
## **CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, and dismissing the complaint with prejudice.

DATED: November 25, 2020

SHERI PYM
United States Magistrate Judge